◼ NATHAN ROBBINS, as Trustee, Respondent, v. FRANCES GOLDSTEIN et al., Appellants, et al., Defendants. NATHAN ROBBINS, as Trustee, Respondent, v. FRANCES GOLDSTEIN, et al., Appellants, et al., Defendants.— Two orders of the Supreme Court, Nassau County, one in the first above-entitled action dated March 2, 1968, and the other in the second above-entitled action dated March 21, 1968, affirmed, without costs. No opinion. Rabin, Acting P. J., Martuscello and Kleinfeld, JJ., concur; Benjamin and Munder, JJ., dissent and vote to reverse the orders and deny plaintiff's motions, with the following memorandum: The subject orders granted summary judgment to plaintiff in two mortgage foreclosure actions. In his moving affidavits plaintiff stated that he loaned $25,000 to a corporation, the Hudson River Warehouse and Trucking Corp.; that the corporation executed a note therefor; that defendants Seymour Kaplan and Leonard Kaplan guaranteed payment of that note; that their mother, Frances Goldstein (who has since died), executed a mortgage on three buildings to secure the loan; and that there has been a default in payment of interest and principal due on the loan. In opposition to the motions for summary judgment, defendant Seymour Kaplan stated the following: Prior to the transaction herein involved, he, his brother and his mother were the principals in a long-established trucking company known as Grey Fleet Trucking Co., Inc. Needing a new warehouse, he discussed a possible location with defendant Ralph Miller, an attorney and friend. After investigating the matter, Miller told him he would need substantial moneys for the deal, and that he (Miller) would arrange the financing if he became a partner. Miller and defendant Murray Rayburn, acting as attorneys, then organized Hudson River Warehouse and Trucking Corp., arranged the financing and became principals in the new business. Stock in that corporation was not issued and Seymour Kaplan never saw the minute books which were supposed to name him and his brother as officers, but he did not complain because he was grateful to Miller. In December, 1962, when the new corporation needed additional capital, Miller and Rayburn said plaintiff was willing to invest in the business and, to protect his option to make such investment, he would lend the money to the corporation; and at the will of either party the loan could later be converted into an investment. In February, 1963, a note was prepared and executed by the corporation. Thereafter, Miller and Rayburn suggested that to have plaintiff become an investor they should all show their faith in the corporation by giving him mortgages on their homes — defendant Goldstein on the three houses in which she and her sons lived, and Miller and Rayburn on their homes. The arrangement was that Miller and Rayburn would hold the mortgages until plaintiff became an investor in the corporation, and would not deliver them without the consent of the Kaplans and their mother. The mortgage covering the subject premises was delivered to Miller and Rayburn on February 23, 1963, but it was not acknowledged by defendant Goldstein until June 18, 1963

and was not recorded until September 8, 1964. Nevertheless, plaintiff says that he assigned the mortgage to a trust on February 23, 1963, which was long before it was acknowledged. Moreover: no stock in the corporation was ever issued to the Kaplans; Miller and Rayburn never executed mortgages on their homes; the Kaplans and their mother never consented to delivery of the mortgage to plaintiff; by 1964 it became apparent that the stock would never be issued to the Kaplans, and they then were "eased" out of their jobs and out of the business; the original $25,000 loan to the corporation was in two checks — one for $15,000 payable to the corporation, the other for $10,000 payable to Rayburn and indorsed by him and the corporation; defendants Miller and Rayburn were never served with process in the actions; and plaintiff has never submitted to an examination before trial despite a notice to do so. In our opinion the facts in this case are so obscure and unsure, and the circumstances so odd, that a plenary trial is required to ascertain the truth. Plaintiff has offered no explanation for the delay in acknowledgment of the mortgage, of the fact that he assigned it before it was acknowledged, or of the fact that $10,000 of the $25,000 loan was made payable to Rayburn. It strikes us as peculiar that Miller and Rayburn did not sign the guarantee (though they allegedly had promised the Kaplans that they would do so and the guarantee had their names typed on it), they did not give mortgages on their homes, and they were not served with process in the actions, though named as defendants. Plaintiff says that if there was any fraud it was between the Kaplans and their mother on one side, and Miller and Rayburn on the other side, and that he was not a party to it. But in our view the irregularities and peculiar circumstances above outlined indicate that, if Miller and Rayburn perpetrated a fraud on the Kaplans and their mother, plaintiff may well have been a party to it, particularly since he was brought into the transaction by them and it was so arranged that only the Kaplans and their mother would be liable to him. As plaintiff (along with Miller and Rayburn) would have knowledge of the facts of their interrelationship in these transactions; as the Kaplans do not have such knowledge; and as the Kaplans have not had a pretrial examination of plaintiff, we think there should be a plenary trial at which the facts can be fully explored and developed. We therefore vote to reverse the orders and deny plaintiff's motions for summary judgment.